## THE DIMITRI DONSKOI.

### THE HEIPERSHAUSEN.

### THE B. T. HAVILAND.

#### EMPEROR OF ALL THE RUSSIAS v. THE HEIPERSHAUSEN and THE B. T. HAVILAND.

(District Court, S. D. New York. March 1, 1894.)

1. COLLISION—ANCHORED VESSEL—LAUNCH AT END OF BOOM — LIGHTS — PROJECTION OF BOOM.
   A Russian man of war, the D. D., was lying at anchor in New York harbor on proper anchorage ground, and was exhibiting proper lights. Her steam launch was made fast to a boom nearly 60 feet long, projecting from the side of the ship. During the night the launch was run into and sunk by a tow which the evidence showed was in charge of defendant tugs. *Held*, that the launch was not required to exhibit a light of her own, that the projection of the boom was not unusual or unreasonable, and that the two tugs were liable for the collision.

2. COSTS AND FEES—EXPENSES OF IDENTIFYING COLLIDING VESSEL.
   Expenses of identifying a colliding vessel are not warranted as an item of recovery in a collision case.

In Admiralty. Libel for collision.

Goodrich, Deady & Goodrich, for libelant.
Carpenter & Mosher, for claimants.

BROWN, District Judge. During the Columbian Naval Exhibition of June, 1893, the Russian man of war, Dimitri Donskoi, lay at anchor in the North river, off Forty-Eighth street. At about 12:15 a. m. on the morning of June 12th, while thus lying at anchor in the ebb tide, with her steam launch resting upon the water, but suspended from her boom, which projected nearly 60 feet from the ship's starboard side, and was about 16 or 17 feet above the water, the launch was struck and sunk by some tow coming down the river between the ship and the New York shore, and her boom at the same time was carried round against the captain's gig, doing that also some damage. The above libel was filed to recover for the loss, claiming that it was caused by the tow of which the Heipershausen and Haviland were in charge.

The defendants contend that the ship was not anchored in a proper place; that the projection of her boom was negligent and unjustifiable; that the launch showed no light to indicate her position; and that the identity of the tow that caused the damage is not sufficiently established.

The place of anchorage is proved by a great preponderance of evidence on the libelant's behalf, showing that she was anchored on the prescribed anchorage ground, from 700 to 900 feet from the New York shore. The ship exhibited proper lights. No rule required the launch to exhibit any additional light; nor did the boom project an unusual or unreasonable distance for such a ship, nor beyond the distance of 20 yards, which is the distance prescribed by statute for vessels passing each other. 1 Rev. St. N. Y. p. 684, § 7.

The evidence shows that the tow of the Heipershausen came down between this man of war and the New York shore at about the time when this accident happened, and that at least one of the boats in her tow came in collision with the boom and received some damage from it. In the face of this fact, and of the other testimony, neither the mere circumstance that the drifting of this tow against the chain, as charged, is not proved, nor the other slight circumstances of supposed difference, are sufficient to create a reasonable doubt that it was the Heipershausen's tow that caused the damage to the launch and the gig, in the absence of proof of any other tow coming in that passage at about the same time. I do not understand, in fact, how it was possible that the proved collision with the boom could have occurred without striking the launch also, unless the launch had been already run into and capsized by the forward boats of the same tow. It is immaterial, as regards the liability of the claimants' tugs, by which of the boats in the tow the launch or boom was struck.

Not finding any reasonable doubt as to the identity of the tow, the libelant is entitled to a decree, with a reference to compute the damages. I do not think an allowance of the expenses incurred in identifying the tow is warranted.